UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

------------------------------------------------------X
ENTEGRIS, INC.,                                  )
    Plaintiff,                                        )
                                          )   Civil Action No. 06-10601 GAO
v.                                                      )
                                          )   MEMORANDUM IN SUPPORT OF
PALL CORPORATION,                           )   MOTION FOR PRELIMINARY
  Defendant.                                          )   <u>INJUNCTION AGAINST INFRINGEMENT</u>
------------------------------------------------------X

I.    <u>Introduction</u>

The plaintiff, Entegris, Inc., ("Entegris"), which merged with Mykrolis Corporation in August 2005, owns U.S. Patent No. 7,021,667 ("the '667 Patent") issued on April 4, 2006. Entegris manufactures and sells pumps and filter systems for the semiconductor industry. The '667 Patent discloses and claims a novel quick connect manifold assembly for a disposable fluid separation module and novel fluid processing systems including a quick connect manifold. Pall Corporation ("Pall") is infringing the '667 Patent with its PhotoKleen™ EZD-3 Filter Assembly products ("the EZD-3").

In the mid 1990s, the plaintiff invented an innovative quick-connect manifold assembly that significantly reduces the time required to change a filter used in the semiconductor manufacturing process and vastly enhances the safety of the filter change-out procedure. The invention has enjoyed widespread commercial success. To protect its quick-connect technology, the plaintiff secured patent protection including the '667 Patent and related patents U.S. Patent 6,068,770 ("the '770 Patent") and 6,378,907 ("the '907 Patent") (collectively, "the Related Patents").[1]

Pall took advantage of the inventions disclosed in the Related Patents. In 2003, the plaintiff brought an action against Pall for infringement of the Related Patents by products then

---

[1] The inventors developed the invention that is the subject of the '667 Patent and the Related Patents while working for the microelectronics division of Millipore Corporation ("Millipore"). The division, which later separated from Millipore to form Mykrolis, is now part of the plaintiff, Entegris. These entities will collectively be referred to as "plaintiff" unless otherwise specified.

being sold by Pall. This Court issued a preliminary injunction against Pall in April 2004. In January 2005, the Court held Pall in contempt for violation of that injunction. The Court also dissolved the preliminary injunction on the basis of certain prior art Pall provided the Court after the injunction issued. The dissolution is one of the subjects of cross-appeals of that case pending before the Federal Circuit.

The new '667 Patent issued after consideration by the U.S. Patent and Trademark Office of prior art, including the prior art identified by Pall, and after the Patent Office's consideration of this Court's decisions. Pall is infringing Entegris's patent rights and causing Entegris irreparable harm by selling and offering to sell a new generation of its previously enjoined filter assemblies, which Pall calls the EZD-3. Pall's previously enjoined products also infringe the '667 Patent.

Entegris has invested a great deal of time, money, and effort to build market share and customer relationships for its innovative devices. Pall is unlawfully using Entegris's proprietary technology to build market share in the competitive market for point-of-use photochemical filtration systems. A preliminary injunction is necessary to prevent this irreparable harm.

II.   Facts:

    A.   Background of the Patented Technology

The inventions disclosed and claimed in the '667 Patent have commercial applications in photolithography "tracks," which are large items of equipment for performing photolithographic processes, including "spin-coating" processes in which liquid photochemicals are dispensed onto a semiconductor wafer by a specialized pump, and dispersed over the wafer in a uniform thin film. Dispense pumps are used in spin-coating processes to reliably and repeatedly dispense precise volumes of photochemicals onto the semiconductor wafers. "Point-of-use" filtration systems are used in conjunction with the dispense pumps to purify the liquid photochemicals to

ensure that they are absolutely pure when dispensed on the wafer. Because these products handle sensitive and often hazardous process fluids in the sterile "clean room" environment for semiconductor fabrication, concerns such as contamination, safety, and efficiency are paramount. Pritchard Afft. ¶8.

In 1995 and early 1996, the plaintiff developed a novel fluid processing system. The novel system differs from earlier fluid processing systems used in photochemical dispense and filtration applications in that it employs a novel design for a quick-connect manifold assembly and fluid separation module. The novel design allows for rapid engagement and disengagement between sets of mating connectors on the disposable fluid separation module and the reusable manifold, enabling quicker, cleaner and safer filter change-outs. King Afft. ¶11.

Before the plaintiff's invention, the fluid separation devices used for the point-of-use filtration of liquid photochemicals generally fell into two classes: filter cartridges mounted in reusable housings, and separation devices having a filter element permanently attached inside an in-line disposable housing. Disadvantages in these filtration systems included the time required for filter change-out and to clean the frequent photochemical spills. Operator exposure to hazardous photochemicals and photochemical fumes during filter change-out resulted in health and safety issues. The quick-connect manifold assembly and disposable fluid separation module represented important advances over then-existing devices for photochemical filtration, providing improved efficiency and cost savings and clean filter changes that minimized operators' exposure to hazardous photochemicals and photochemical fumes. King Afft. ¶12.

The plaintiff began selling its inventive quick-connect manifold assemblies and disposable fluid separation modules in 1997, as part of the IntelliGen® dispense pump/photochemical filtration system. This product was commercially successful, and, due to customer demand, the plaintiff introduced a stand-alone version of its quick-connect manifold

and fluid separation module in 1998 that was sold without a pump. In the early 2000s, the defendant Pall introduced into the United States its own version of a quick-connect manifold assembly with a disposable fluid separation module, the PhotoKleen™ EZD-2. In the summer of 2004, Pall introduced the EZD-3 product that is being sold today. King Afft. ¶13.

Quick-connect manifolds with disposable fluid separation modules have now become standard in the semiconductor industry for point-of-use photochemical filtration. Pritchard Afft. ¶14.

B.   The Patented Invention of Entegris

The application that issued on April 4, 2006 as the '667 Patent was filed on May 16, 2003, and published on April 15, 2004. The '667 Patent claims priority to the application that issued as the '907 Patent, filed on July 10, 1998, as well as the application that issued as the '770 Patent, filed on July 12, 1996.[2] The newly-issued '667 Patent has claims directed to further inventive aspects of the plaintiff's quick-connect manifold assembly and disposable fluid processing module invention. King Afft. ¶ 14.

The '667 Patent includes 29 claims, including 4 independent claims and 25 dependent claims. Independent claim 2, one of the claims directly infringed by Pall, is set forth below:

> 2.   A quick-connect manifold assembly for a disposable fluid separation module, comprising:
>
> a fluid connector member comprising a first set of at least three connectors extending through the fluid connector member, the connectors being spaced apart and parallel to one another; and
>
> a module receptor configured with the fluid connector member so as to provide the module receptor a limited range of a first movement relative to the fluid connector member, the module receptor receiving a disposable fluid separation module having a

---

[2] The '667 Patent was filed as a continuation of U.S. Patent Application No. 10/079,360 ("the '360 Application"), which was filed on February 20, 2002 as a divisional of the '907 Patent, which was filed as a continuation-in-part of the '770 Patent. The '770 and '907 Patents include claims directed to various aspects of a fluid separation apparatus and a manifold assembly in accordance with the plaintiff's invention, and are the subject of a pending patent infringement action in this court, Civil Action No. 03-10392 GAO, between Entegris (Mykrolis) and Pall. King Afft. ¶14. In that case, issues concerning issuance of a preliminary injunction, a finding of contempt and award of attorneys' fees, and dissolution of the preliminary injunction are currently on appeal to the Court of Appeals for the Federal Circuit.

> second set of connectors, the first set of connectors capable of being substantially simultaneously engaged to, or disengaged from, the second set of connectors on the disposable fluid separation module by the first movement of the module receptor;
>
> wherein at least one connector of the first set of connectors is for introducing liquids to the disposable fluid separation module, at least one connector of the first set of connectors is for withdrawing liquids from the disposable fluid separation module, and at least one connector of the first set of connectors is a gas vent from the disposable fluid separation module.

Affidavit of Professor Samir Nayfeh ("Prof. Nayfeh Afft.") ¶5.[3]

    C.    <u>The Prosecution History of the '667 Patent</u>

Prior to substantive examination of the application that issued as the '667 Patent, the plaintiff filed a Petition to Make Special on July 28, 2004, requesting expedited examination of the application on the grounds that the claims of the application were infringed by products on the market from Pall. *See* 37 C.F.R. § 1.102. The Petition to Make Special on grounds of infringement was granted by the Patent Office on January 13, 2005. King Afft.¶15.

During the prosecution of the application, the patent Examiner conducted prior art searches to determine material prior art. In addition, the plaintiff filed twelve Information Disclosure Statements ("IDS") using PTO-1449 Forms to submit references and other information to the Examiner. The Examiner considered all of the references submitted, as evidenced by the Examiner initialing the reference citations on the forms submitted by the plaintiff. King Afft. ¶16-17.

On the IDS forms, the plaintiff disclosed prior art references and other information that was brought to the plaintiff's attention in the plaintiff's other patent prosecution matters, as well as

---

[3] Claims 3 to 13 depend directly or indirectly from independent claim 2, and include further claim elements directed to particular aspects of the plaintiff's invention. Independent claims 1, 14, and 25 are directed to further aspects of the invention disclosed in the '667 Patent, and each of these claims includes a claim element reciting a pump. Claims 15 to 24 depend directly or indirectly from independent claim 14 and claims 26 to 28 depend directly or indirectly from independent claim 25, and each of these dependant claims is directed to particular aspects of the plaintiff's invention. Prof. Nayfeh Afft. ¶¶5, 10, 26, 28, 30, 34 and 36.

references and other information from its litigation with Pall in Civil Action No. 03-10392 GAO. Where appropriate, actual pleadings were provided to the Examiner. In particular, the plaintiff submitted to the Patent Office the District Court's April 30, 2004 Memorandum and Order issuing a preliminary injunction against Pall for infringement of the plaintiff's '770 and '907 Patents, and the four references asserted by Pall as allegedly invalidating the '770 and '907 Patents, and which were discussed in the April 30, 2004 Memorandum and Order.[4]  King Afft. ¶16.

In August of 2004, the plaintiff submitted two published Japanese patent applications, JP 5-154200 ("Sumitomo '200") and JP 5-154201 ("Sumitomo '201"), together with court documents from Pall alleging that these publications were "significant" to the claims of the '770 and '907 Patents. Further documents from Civil Action No. 03-10392 GAO were also submitted by the plaintiff, including photographs and other materials relating to the Sumitomo publications, and the District Court's January 12, 2005 Memorandum and Order, which ruled, in part, that the Sumitomo '200 and '201 references raised a substantial enough question as to the validity of the asserted claims of the '770 and '907 Patents that the Court dissolved its earlier preliminary injunction against Pall.  King Afft. ¶16.

The Patent Office issued two Office Actions during the examination of the '667 Patent, making substantive rejections of the claims on prior art grounds, and the plaintiff responded to both Office Actions. In an Amendment and response to the first Office Action filed on April 8, 2005, the plaintiff successfully overcame the rejection of all pending claims as being either anticipated or rendered obvious by the Sumitomo '201 publication. In its response to the second Office Action, the plaintiff successfully overcame a rejection of claim 1 for anticipation by U.S. Patent 6,048,454 to Jenkins. As a result, the application was allowed on October 19, 2005. On

---

[4] The four references are U.S. Patent 3,727,764 to Ogden ("Ogden"), 4,559,136 to Dockery ("Dockery"), 5,022,986 Lang, and 5,762,787 to Park et al. ("Park"). These four references were specifically identified to the Patent Office in the Petition to Make Special, and again in Remarks to the Examiner filed on July 28, 2004.  King Afft. ¶16.

November 9, 2005, the Examiner initiated a telephone interview with the plaintiff's representatives to discuss further claim amendments and a reference, U.S. Patent 4,568,456 to van Zon. A new Notice of Allowance, incorporating the amendments suggested by the Examiner, was mailed on December 13, 2005. The Issue Fee was paid on January 11, 2006, and the '667 Patent issued on April 4, 2006. King Afft. ¶18.

### D. Pall Products

#### 1. The EZD-3 Product

Pall is currently offering the EZD-3 Filter Assembly[5] for sale in the United States on its corporate website. The EZD-3 product is a manifold assembly for quickly connecting and disconnecting a disposable separation module. The EZD-3 product was introduced by Pall in the Summer of 2004. A sample of this product was provided to the plaintiff in connection with Civil Action No. 03-10392-GAO. King Afft. ¶19. The EZD-3 is designed for point-of-use filtration of photochemicals for the semiconductor industry, and more particularly for use with photochemical dispense systems having dispense pumps. According to Pall's product literature, the EZD-3 is designed for safe, quick, and easy filter change-outs. King Afft. ¶23.

Professor Nayfeh describes the operation of the EZD-3 in detail in his affidavit. Briefly, the EZD-3 has a fluid connector member 3 with three connectors 25 that are spaced apart and parallel to one another; these connectors extend through the fluid connector member. Prof. Nayfeh Afft. ¶14. The EZD-3 also includes a disposable separation module 2 with three connectors 21 on its top. These connectors 21 are also spaced apart and parallel to one another, and are sized and shaped to engage with the connectors 25 on the fluid connector member. The three connectors 25 on the fluid connector member are an inlet for introducing liquids (such as

---

[5] The EZD-3 product is shown in photographs A through H attached to the Prof. Nayfeh Afft. as Exhibit D. Reference numbers in the following description correlate to the numbers in photographs A through H.

photoresists) to the disposable module, an outlet for withdrawing liquids from the disposable module, and a gas vent. Prof. Nayfeh Afft. ¶15.

The EZD-3 includes a housing member or receptor 5 that receives a module 2 prior to engagement of the module connectors to the connectors on the fluid connector member. This receptor 5 is moveable with respect to the fluid connector member. The receptor 5 has a limited range of vertical motion relative to the fluid connector member 3. Pins 17 extend from the receptor through the handle 18 of the device, to the fluid connector member 3, and form a point of attachment between the fluid connector member 3 and the receptor 5. During operation of the EZD-3, the operator places a disposable separation module 2, onto the bottom surface of the receptor 5, which receives and supports the module 2 prior to and during engagement of the mating connectors. The operator then pivots a handle 18 downward about the pins 17 that connect the receptor 5 to the fluid connector member 3. This causes the receptor 5 to move vertically upward, causing the separation module 2 to move upward, and thus moves the three connectors 21 of the module into engagement with the corresponding connectors 25 of the fluid connector member 3. The engagement of all three pairs of mating connectors occurs essentially simultaneously. Prof. Nayfeh Afft. ¶16.

The vertical downward motion of the receptor 5 relative to the fluid connector member 3 causes the connectors 21 on the module 2 to disengage from the connectors 25 on the fluid connector member 3, and this disengagement occurs essentially simultaneously for all three pairs of mating connectors. Prof. Nayfeh Afft. ¶17.

    2. <u>EZD-3 Retrofit</u>

In the past, Pall has sold a product known as the "EZD-3 Retrofit" that is specifically designed to be installed on an Entegris pump enabling use of a Pall module as a replacement instead of an Entegris module. There are two types of EZD-3 Retrofit manifolds: a "slide-in"

version that is designed to be used in conjunction with an Entegris quick-connect manifold, and a "bolt-on" version that is designed to replace the Entegris quick-connect manifold in its entirety, and both are the same as the EZD-3 in all respects material to analyzing infringement of the '667 Patent.  King Afft. ¶20; Nayfeh Afft. ¶22.  Retrofit devices were sold by Pall at least during 2003 and 2004.  Entegris is not aware of current sales of these devices by Pall, but Entegris believes that Pall is supplying filter modules for use in EZD-3 Retrofit manifolds currently in use in the United States.[6]  Pritchard Afft. ¶17.

       3.     EZD-2 Filter Assembly

Pall sold a number of products similar to its EZD-3 products under various product designations, including the PhotoKleen™ EZD-2 Filter Assembly ("the EZD-2"), which was the initial subject of Civil Action No. 03-10392 GAO.  As with the EZD-3, the EZD-2 was sold both as a "stand-alone" manifold, and as a "retrofit" manifold.  King Afft. ¶21.  Between its EZD-2 and EZD-3 products, Pall introduced further intermediary products combining features present in the EZD-2 and the EZD-3.  King Afft. ¶22.  All these products are the same as the EZD-3 in all respects material to analyzing infringement of the '667 Patent.  King Afft. ¶22; Nayfeh Afft. ¶23.

Entegris does not know whether Pall is engaging currently in commercial activities in the United States with its EZD-2 products.  Entegris believes that Pall has the capability to resume the manufacture, importation, and sale of these products in the United States during the term of the '667 Patent.  Pritchard Afft. ¶18.

E.     The Marketplace for the Invention

Entegris sells dispense pumps and point-of-use filtration systems to original equipment manufacturers (OEMs) of photolithographic tracks, as well as to end-users of these tracks.  End-

---

[6] The plaintiff believes the EZD-2 Retrofit or the EZD-3 Retrofit is currently in-use at a facility of one major end-user customer in the United States, because the customer has stopped purchasing replacement filter modules for its Entegris pumps.  The only way known to the plaintiff to retrofit an Entegris pump with a Pall EZD-2 or EZD-3 filter is by using a Pall Retrofit manifold.  Pritchard Afft. ¶17.

Page 9

users purchase and use the tracks for the manufacture of semiconductor device chips. Entegris markets its products to OEMs so that they will use these products in their tracks, as well as to end-users so that they will request that Entegris's products be installed in the tracks sold to them. In addition, the filters in our point-of-use filtration systems need to be changed regularly, and Entegris sells replacement filters directly to end-users. Pritchard Afft. ¶9.

The largest OEM manufacturers are Tokyo Electron Ltd. (TEL), and Dainippon Screen Mfg. Co. Ltd. (DNS), both of Japan. Together, it is believed that these two companies have over 90% of the global market share for photolithographic tracks. There are a number of semiconductor manufacturers in the United States purchasing TEL and DNS tracks, including Intel, IBM, Texas Instruments, Infineon, Motorola, Micron Tech, Spansion (formerly AMD), and Freescale. Pritchard Afft. ¶10.

Most of the new tracks being purchased today by U.S. semiconductor manufacturers are so-called "next generation" tracks compatible with 300 mm wafers. These "next generation" tracks have undergone a lengthy qualification process by several U.S. semiconductor manufacturers, and are now being shipped in large numbers to semiconductor manufacturing facilities in the U.S. It is expected that even greater numbers of these tracks will be shipped within the next year. Pritchard Afft. ¶11.

One characteristic of the "next generation" tracks is that they generally have more dispense points than the older tracks they are replacing. Thus, for each new "next generation" track that is sold, there is typically a greater opportunity for Entegris to sell its photochemical dispense pumps and point-of-use filtration products. Pritchard Afft. ¶12.

The quick-connect manifold assemblies and disposable separation modules that are the subject of the '667 Patent are currently being sold for point-of-use filtration in photolithographic tracks. The paintiff was first to the market with these products, and Entegris currently sells these

products as part of an integrated system including a dispense pump, and as a stand-alone unit that can be used with a competitor's pump. Pall subsequently entered the market, and is currently selling a quick-connect manifold and disposable separation module known as the EZD-3 that is primarily used with a competitor's pump. Quick-connect manifolds with disposable fluid separation modules have become standard in the semiconductor industry for point-of-use photochemical filtration. Pritchard Afft. ¶14.

Pall's EZD-3 is currently being sold on photolighographic tracks being shipped to the United States, and it is believed that the EZD-3 will be on a substantial number of new tracks being shipped to the United States within the next year. It is believed that Pall has convinced at least two of the largest semiconductor manufacturers in the United States to purchase Pall's EZD-3 on all of their new tracks being shipped to the U.S. Pritchard Afft. ¶15.

The introduction of Pall's EZD-3 in the market for point-of-use photochemical filtration has already had a substantial negative effect on Entegris's market share and pricing structure for its products. It is expected that the continued availability of Pall's EZD-3 will further erode Entegris's market position, and will result in substantial lost profits as more new tracks having EZD-3 products are installed in semiconductor manufacturing facilities in the United States. Pall's sale of the EZD-3 has and will continue to interfere with Entegris's relationship with its customers, and will cause a loss of good will to Entegris. Pritchard Afft. ¶16.

III.   The Law:

In patent cases, the district courts are empowered to "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. §283. The issuance of a preliminary injunction is governed by Rule 65 of the Federal Rules of Civil Procedure. In exercising its discretion in determining whether to issue a preliminary injunction, it is important for the court to consider

that, "Public policy favors protection of the rights secured by valid patents." *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir.), *cert. den.*, 464 U.S. 996 (1983).

The moving party must establish its right to a preliminary injunction in view of four factors:

(1)   the likelihood of patentee's success on the merits;

(2)   irreparable harm if the injunction is not granted;

(3)   the balance of the hardships between the parties; and

(4)   the public interest.

*See National Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1324-25 (Fed. Cir. 2004); *Ranbaxy Pharms., Inc. v. Apotex, Inc.*, 350 F.3d 1235, 1239 (Fed. Cir. 2003); *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1338-1339 (Fed. Cir. 2003). No one factor is dispositive, but each must be weighed and measured against the others, and against the form and magnitude of the requested relief. *Hybritech Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1451 (Fed. Cir. 1988).

A.   <u>Likelihood of Success on the Merits</u>

To demonstrate a reasonable likelihood of success on the merits, the plaintiff must show that, in light of the presumptions and burdens that will inhere at trial on the merits, (1) it is likely to prove infringement, and that (2) its infringement claim will likely withstand any challenges made by the defendant to the validity and enforceability of the patents. *Ranbaxy*, 350 F.3d at 1239; *Oakley*, 316 F.3d at 1339-40; *Purdue Pharma L.P. v. Boehringer Ingelheim, GmbH*, 237 F.3d 1359, 1363 (Fed. Cir. 2001). In order for the court to make a determination regarding validity and infringement, it must first construe the claims of the subject patents. See *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1330 (Fed. Cir. 2001). (First, the claims of the patent must be construed to determine their scope. Second, a determination must be made as to whether the properly construed claims read on the accused device. ) In construing claims,

"[i]t is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude,'" and the words of a claim are generally given their ordinary and customary meaning as would be understood by a person of ordinary skill in the art in question at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (citations omitted).

1. Claim Construction

Entegris sets forth in this brief its construction of claim 2; however, a full construction of other claims infringed by the EZD-3 are included in Prof. Nayfeh's affidavit and Claim Chart attached to Prof. Nayfeh's affidavit as Exhibit C.

Claim 2 of the '667 Patent is directed to "a quick-connect manifold assembly for a disposable fluid separation module" which is a manifold assembly for quick connection and disconnection of a disposable fluid separation module. A "disposable fluid separation module" is a module that is installed and removed as a unit and can be disposed of after removal. When the separation element within the module needs replacement, the entire module is removed from the assembly and disposed of. Prof. Nayfeh Afft. ¶6; Ex. C.

The assembly has "a fluid connector member comprising a first set of at least three connectors extending through the fluid connector member, the connectors being spaced apart and parallel to one another" which is a fluid connector member with a group of at least three connectors extending through the fluid connector member. The connectors are spaced apart and parallel to one another. Prof. Nayfeh Afft. ¶7; Ex. C.

The "module receptor" element should be construed as an element having a limited range of movement relative to the fluid connector member. The module receptor accepts a disposable fluid separation module having a second group of connectors. The movement of the receptor relative to the fluid connector member engages the first group of connectors on the fluid

Page 13

connector member to the second group of connectors on the separation module. This engagement occurs essentially simultaneously for all the mating pairs of connectors. The movement of receptor relative to the fluid connector member also disengages these connectors, with disengagement occurring substantially simultaneously for all the mating pairs of connectors. Prof. Nayfeh Afft. ¶8; Ex. C.

Finally, the connectors on the fluid connector member are as follows. One connector on the fluid connector member introduces liquids into the module. A second connector on the fluid connector member withdraws liquids from the module. A third connector on the fluid connector member is a gas vent, and removes gas from the module. Prof. Nayfeh Afft. ¶9; Ex. C.

### 2. The EZD-3 Infringes

The Pall PhotoKleen™ EZD-3 Filter Assembly directly infringes at least claims 2, 3, 5, 7, 8, 10 and 13 of the '667 Patent, as each limitation of these claims is met by the EZD-3. This is shown in the Claim Chart attached to Professor Nayfeh's Affidavit as Exhibit C. Prof. Nayfeh Afft. ¶21; Ex. C. With regard to claim 2, in particular, the EZD-3 has a manifold assembly for quickly connecting and disconnecting a disposable separation module. Prof. Nayfeh Afft. ¶14; Ex. C. The manifold assembly has a fluid connector member 3 with three connectors 25. The connectors are spaced apart and parallel to one another, and extend through the fluid connector member. Prof. Nayfeh Afft. ¶14; Ex. C.

The EZD-3 also includes a receptor 5 that has a limited range of vertical motion relative to the fluid connector member 3. The receptor 5 accepts a module 2, and the movement of the receptor 5 relative to the fluid connector member 3 moves the three connectors 21 of the module into engagement with the corresponding connectors 25 of the fluid connector member 3. The engagement of all three pairs of mating connectors occurs essentially simultaneously. The movement of the receptor 5 also causes the connectors 21 on the module 2 to disengage from the

connectors 25 on the fluid connector member 3. This disengagement occurs essentially simultaneously for all three pairs of mating connectors. Prof. Nayfeh Afft. ¶16-17; Ex. C.

The three connectors 25 on the EZD-3 are an inlet for introducing liquids, an outlet for withdrawing liquids, and a gas vent that removes gas from the module. Prof. Nayfeh Afft. ¶15; Ex. C. Each and every limitation of claim 2 is met by the EZD-3 product.

In addition, Pall is engaging in contributory infringement and active inducement of infringement of at least claims 1, 11, 12, 14, 17, 18, 22 and 24-28 of the '667 Patent by selling the EZD-3 filter assembly for use in infringing photochemical dispense systems having fluid pumps connected to the EZD-3. Prof. Nayfeh Afft. ¶25-36; King Afft. ¶24-25.[7]

Pall is also engaging in contributory infringement of at least claim 24 of the '667 Patent by selling replacement EZD-3 disposable separation modules to customers in the United States having infringing photochemical dispense systems. Prof. Nayfeh Afft. ¶33; King Afft ¶27-28, 30. Pall is also actively inducing the infringement of at least claims 2, 3, 5, 7, 8, 10 and 13 of the '667 Patent by selling and offering to sell replacement separation modules for infringing quick connect manifold assemblies in the United States, including the EZD-3 and the EZD-2 manifold assemblies, thereby perpetuating the infringing use of these products. King Afft. ¶31.

Pall is selling, offering to sell, and importing a product, the PhotoKleen™ EZD-3 Filter Assembly, that meets all the limitations of Entegris's patent claims.[8] 35 U.S.C. §271(a). "Where use infringes, repair does also, for it perpetuates the infringing use." *Aro Mfg. Co. v.*

---

[7] The Pall PhotoKleen™ EZD-2 Filter Assembly would directly infringe at least claims 2, 3, 5-10 and 13 and of the '667 Patent if this product were manufactured, sold, used, offered for sale or imported during the term of the '667 Patent, as each limitation of these claims is met by the EZD-2. Prof. Nayfeh Afft. 37; Ex. C. The sale, offering for sale or importation of the EZD-2 would additionally constitute contributory infringement and active inducement of infringement of claims 1, 11, 12, 14, 17, 18 , 21, 22 and 24-29 of the '667 Patent. Prof. Nayfeh Afft. ¶25-36; King Afft. ¶25, 29.

[8] The motion seeks an injunction that encompasses earlier EZD products sold by Pall Corporation, including EZD-2 and Retrofit products. Pall is capable of selling these infringing products in the future, and voluntary cessation of infringing activities does not vitiate the need for injunctive relief. See W.L. *Gore & Assocs., v. Garlock, Inc.*, 842 F.2d 1275, 1281-82 (Fed. Cir. 1988); *Genentech, Inc. v. Wellcome Found. Ltd.*, 826 F. Supp. 828, 830-831 (D. Del. 1993).

*Convertible Top Replacement Co.*, 377 U.S. 476, 484 (1964).  Therefore, Pall is also contributorily infringing and actively inducing infringement of these claims by selling, offering to sell, and importing products, including EZD-3 manifolds and replacement modules, for use in infringing photochemical dispense systems and by promoting and encouraging the use of the PhotoKleen™ EZD-3 Filter Assembly by customers in the United States, including by providing these customers with replacement separation modules.  35 U.S.C. §271(b)-(c).  *See W.L. Gore & Assoc. v. Garlock, Inc.*, 670 F. Supp. 760, 767 n.6 (N.D. Ohio 1987), *aff'd in part, revd in part, and remanded*, 842 F.2d 1275 (Fed. Cir. 1988).

        3.        <u>Pall Cannot Raise A Substantial Question Regarding Validity</u>

It is unlikely that the defendant will be able to raise any substantial question regarding the validity of the plaintiff's patent claims.  *See Purdue*, 237 F.3d at 1363.  By statute, each claim of the '667 Patent is presumed valid, and this presumption can only be overcome by clear and convincing evidence to the contrary.  *Purdue*, 237 F.3d at 1365; 35 U.S.C. §282.  This presumption of validity "exists at every stage of the litigation, including during a preliminary injunction."  *Canon Computer Sys v. Nu-Kote Int'l*, 134 F.3d 1085, 1088 (Fed Cir. 1998).  Unless the alleged infringer undertakes to challenge validity with evidence, the patentee need do nothing to establish its rights under the patent.  *New England Braiding Co, Inc. v. A.W. Chesterton Co.*, 970 F.2d 878, 882 (Fed. Cir. 1992).  Validity in this case is further evidenced by the significant technological achievement of Entegris's "quick-connect" invention, acknowledged by others in the field, which has resulted in considerable commercial success for Entegris, and has succeeded in solving long-standing problems in the semiconductor industry. This objective evidence of non-obviousness further demonstrates the validity of the plaintiff's patents.  *See, e.g., Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).

The Patent Office determined the claims of the '667 Patent are patentable over the art presented by Pall in the prior litigation, including the references on which the Court based its decision to dissolve the injunction. The burden of proving invalidity is "especially difficult" when the infringer attempts to rely on prior art that was before the patent examiner during prosecution. See *Glaxo Group Limited et al. v. Apotex, Inc.*, 376 F.3d 1339, 1348 (Fed Cir. 2004); *Al-Site Corp. v. VSI Int'l Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999).[9]

The plaintiff has shown that it is likely to prevail at trial, and therefore it has established the first factor of the preliminary injunction analysis, reasonable likelihood of success on the merits.

B.   Irreparable Harm

Where the plaintiff makes a strong showing of the likelihood of success on the merits, irreparable harm is presumed. *Ranbaxy*, 350 F.3d at 1239; *Oakley*, 316 F.3d at 1345. Because the principal value of a patent is in the statutory right to exclude, courts have held that the infringement of a valid patent inherently causes irreparable harm. *See Polymer Technologies, Inc. v. Bridwell*, 103 F.3d 970, 975 (Fed. Cir. 1996); *Hybritech*, 849 F.2d at 1446-47. Entegris has made a strong showing that it will succeed on the merits of this case, thus entitling it to a presumption of irreparable harm.

Over and above the presumption, the facts of the present case clearly demonstrate that Entegris will be irreparably harmed unless Pall is enjoined from continued infringement of Entegris's patents. The introduction of Pall's EZD-3 into the market for point-of-use

---

[9] The Federal Circuit has held that "when a party alleges that a claim is invalid based on the very same references that were before the examiner when the claim was allowed, that party assumes the following additional burden: 'When no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents.'" *Ultra-Tex Surfaces, Inc. et al. v. Hill Brothers Chemical Co. et al.*, 204 F.3d 1360, 1367 (Fed. Cir. 2000) (quoting *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984)).

photochemical filtration systems has already had a substantial negative effect on Entegris's market share and pricing structure for its products. It is expected that the continued availability of Pall's EZD-3 will further erode Entegris's market position, and will result in substantial lost profits as more new tracks having EZD-3 products are installed in semiconductor manufacturing facilities in the United States. Pall has already convinced at least two of the largest semiconductor manufacturers in the United States to purchase Pall's EZD-3 on all of their new tracks being shipped to the U.S., and additional manufacturers are using both Entegris quick-connect products and Pall's EZD-3. It is expected that the infringing EZD-3 will be on a substantial number of new "next generation" tracks shipped to the United States this year. *See* Pritchard Afft. ¶15-16. The right to exclude an infringer from the market "is an essential element of the patent right," and should be protected by granting preliminary injunctive relief. *Polymer Tech.*, 103 F.3d at 970.

Pall's continued infringement of Entegris's patent rights will also work irreparable harm on the relationships and goodwill Entegris has built over many years with its customers, including tool manufacturers and chip makers. This injury could never be fully compensated with an award of monetary damages. *See Polymer Tech.*, 103 F.3d at 975-76.

Unless Pall's infringing activity is enjoined now, it will result in substantial and irreversible harm to Entegris over the course of this litigation. A preliminary injunction against Pall is necessary to prevent this irreparable harm.

### C. Balance of Hardships

In considering the balance of hardships, "[t]he magnitude of the threatened injury to the patent owner is weighed, in the light of the strength of the showing of likelihood of success on the merits, against the injury to the accused infringer if the preliminary decision is in error." *Schawbel Corp. v. Conair Corp.*, 122 F.Supp.2d 71, 84-85 (D. Mass. 2000) (citation omitted).

The courts have stated that if the plaintiff will ultimately prevail at trial, "then any harm befalling the defendant is his own doing." *Schawbel Corp.*, 122 F.Supp.2d at 85. The court should weigh the threatened injury in light of the strength of the likelihood of success and should determine that the balance of hardships is in favor of the plaintiff.

    D.    <u>Public Interest</u>

The public interest is served in protecting patent rights against unlawful infringement. *See Smith*, 718 F.2d at 1581. The public would not be served by permitting Pall to ignore and infringe the rights secured by Entegris's patents.

IV.    <u>Conclusion:</u>

Entegris should be granted a preliminary injunction against Pall's infringement of U.S. Patent No. 7,021,667, in the form proposed in the motion for preliminary injunction.

                                          Respectfully submitted,

                                          ENTEGRIS, INC.
                                          By its attorneys,

                                          /s/ Susan G. L. Glovsky
                                          Susan G. L. Glovsky   BBO# 195880
                                          John L. DuPré   BBO# 549659
                                          Kevin T. Shaughnessy   BBO# 648653
                                          Hamilton, Brook, Smith & Reynolds, P.C.
                                          530 Virginia Road
                                          P.O. Box 9133
                                          Concord, Massachusetts 01742-9133
                                          (978) 341-0036

                                          /s/ John T. Montgomery
                                          John T. Montgomery   BBO# 352220
                                          Dalila Argaez Wendlandt   BBO# 639280
                                          Ropes & Gray LLP
                                          One International Place
                                          Boston, Massachusetts 02110
Dated: April 12, 2006                    (617) 951-7000

<u>Certificate of Service</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 12, 2006

<u>    /s/ Susan G. L. Glovsky    </u>
Susan G. L. Glovsky